## *Forsyth vs. Kreakbaum.*                    DETINUE.

Error to the Jessamine Circuit; WILL. L. KELLY, Judge.          Case 13.

*Infants. Guardians. Gifts. Delivery. Possession. Statutes. Frauds.*

Judge MILLS delivered the Opinion of the Court.          April 21.

THIS is a verdict and judgment for the defendant, in an action of detinue for slaves, and the plaintiff has prosecuted this writ of error to reverse it, because of various supposed errors in the instructions and decisions of the court below, delivered in the progress of the trial.

The circumstances are these:

In the year 1803, Isaac Forsyth intermarried with Nancy, the daughter of Michael Litton, and afterwards resided at a distance from him, both residing in the State of Maryland. In the latter part of 1804, Forsyth and his wife, made a visit to her father, having with them the plaintiff, Evelina Forsyth, a child of the marriage, then a few months old. The father who was in easy circumstances, and in the habit of advancing his children in slaves, and of presenting a slave to each of his grand children, during the visit, gave to Forsyth himself, two slaves, and also, presented to Evelina, his infant grand child, an infant slave, then between four and six years of age, and delivered her to the father of Evelina, to be kept and raised by him, along with his child, as her natural guardian.

Forsyth took the slave home with him accordingly, and afterwards, in the winter 1805–6, removed from Maryland to Kentucky, and brought with him his daughter Evelina, and the slave presented to her by her grandfather, with the rest of his family, and settled in the county of Bourbon.

In the year 1811, Forsyth, being a man of bad habits, and having caused some fears, that he might go through his estate, and leave his family in want, executed to Caleb Litton, a bother-in-law, a conveyance of sundry slaves and personal estate, in trust for the exclusive use of his wife Nancy and children, and after her death to go to her children. The

*Marginal notes:*
Detinue for slaves.

Gift of the slave by the grandfather to his infant grandchild.

Forsyth's deed of trust for use of his wife and children.

slave given by the grandfather to his daughter Evelina, was not one of those conveyed in trust for his wife and family, but in the same deed, there is the following paragraph:

Clause in Forsyth's deed of trust in relation to his daughter's slave in question.

"And whereas, Michael Litton, father of the said Nancy, (the wife,) in the State of Maryland, did, by deed of gift, grant and convey to Evelina Forsyth, daughter of the said Isaac, and daughter of the said Nancy, one negro girl slave, named Anne, aged at this time, about ten years old, and the said Evelina is yet under the age of twenty-one years, and the said Isaac Forsyth, by virtue of the guardianship, to which he is entitled over said child Evelina, has still had the keeping, maintainance and benefit of said slave. Now the said Isaac, the more effectually to acknowledge the ownership of said Evelina, and to secure her in the use of said negro girl, doth hereby bargain, sell and convey, to the said Caleb Litton, all his right and title of, in or to said negro girl, Anne, and all right with which he may be vested, to the custody, use and benefit thereof, and all the interest which he might have therein, in trust to be held and kept by him, for the benefit and use of the said Evelina, till she, the said Evelina, shall marry or arrive at the age of twenty-one years, or until, by the death of said Evelina, the said property shall go to her heirs by the ordinary legal course of descent. And in case of the marriage, or arrival at the age of twenty-one years, of the said Evelina, the property of the said girl is to be delivered, and go to her absolute ownership and control."

This deed was duly sealed, executed, acknowledged and recorded on the day it bears date, in the clerk's office of *Bourbon* county, where all the parties reside.

Forsyth sells the slave, and Kreakbaum becomes the purchaser.

After this deed, the trustee still let the said slave Anne, remain in the possession of Forsyth, till on the 14th of July, 1813, Forsyth sold her as his own, for a fair price, to Greenbery Spiers, and executed to him a bill of sale with warranty. Spiers afterwards sold the said slave to Kreakbaum, the present defendant, against whom this action was brought for

the said slave and her children, shortly after it was discovered where the slave was, as she was found in Jessamine, and the sale to Spiers was made in Fayette.

The court below instructed the jury:

*Instructions of the circuit court.*

I. That if the slave in contest was proven to have been upwards of five years in the peaceable and undisturbed possession of Isaac Forsyth, claimed as his own property, she was liable to the payment of his debts, and a sale by him to a *bona fide* purchaser was valid.

II. That the recital in the deed of trust aforesaid, of a pretended bill of sale, or deed of gift from Michael Litton, to the plaintiff, was no evidence of such sale or gift, and passed no title to the plaintiff.

III. That the gift from Michael Litton to the plaintiff was void, as to the defendant, unless possession was delivered at the time of the gift, and such possession remained with the plaintiff.

We cannot perceive on what principle the first instruction can be supported. It is in the teeth of the decision of this court, in the case of Kenningham vs. M'Laughlin, 3 Monroe, 30, which is precisely analogous to the present case, except that was a controversy between the infant donee of the grandfather, and the creditors of the father, and this with a purchase from the father. All our statutes to prevent frauds in the gifts, or loans, or sales of slaves, always contemplate and provide against the frauds of the donor or donee, vendor and vendee, or the borrower and lender. But they no where lay the estate liable to the debts of either, where it is held by one of them, as the natural guardian, or fiduciary, of a third party, who has made no sales or loans, or contracted no debts to be defrauded. It would be a merciless act of the law to deprive an infant of possession, and declare him or her incapable of managing the estate, and for this cause to assign this possession to another, and afterwards make it a fraud in the infant, for permitting that possession, and to subject the estate either to the debts or sales of him, to whom the law confided the possession,

*Father's possession of his infant child's property as natural guardian, does not subject it to his creditors, nor make his sale of it effectual against the child.*

barely because he had the possession. In such case the possession of the father, is the possession of the child. Here the father, or natural guardian, was neither the borrower nor lender, nor donee or grantee of the grandfather, and the grandfather's debts, or purchasers from him, are not in question.

Declarations of the vendor of a party, made before the sale, or the recital in the deed such vendor had executed, are competent evidence against his vendee.

The court admitted the subsequent and frequent parol acknowledgements of Forsyth, after the gift to his daughter, and before he sold the slave, that the slave was not his, to be given in evidence. Such evidence was proper, and the defendant claiming under Forsyth, was bound by his acts and acknowledgments before the sale. We cannot, therefore, see, why the recital in the deed of trust was not evidence of a still more high and unerring character, and as strong as could well be given, that he had not, but that his daughter had title, derived by gift from the grandfather. It was an error therefore, to say, that the recital and provision in the deed of trust, being a most solemn act of Forsyth, did not prove the facts which it contains, as stated in the second instruction.

It seems the statute against fraudulent gifts, does not apply to transactions without the state.

As to the third instruction, it is not more tenable. It is shaped to fit the provisions of the statute of this country, relative to gifts of this character, where possession does not go to the donee at the time of the gift, and it seems to have been forgotten that this gift was in Maryland, where our statute does not operate.

Where a slave is delivered to the father of the infant donee, or the child, the possession does follow the gift, as required by the statute.

Moreover, if the statute could have effect, the instruction had no application to the case. For there was no evidence but what proved possession following the gift, if, as we have already said, the possession of the father as guardian, was the possession of the child. Besides, the latter clause of the instruction, seems to suppose, that the personal possession of the plaintiff was necessary, when the law did not allow her to hold, or manage it, and it excludes the possession of the father, as her possession. How the infant was to hold possession, except by her guardian, we are at a loss to know, and as all the evidence conduced to show such a possession, the last clause of this instruction was as erroneous as the first.

Judgment reversed with costs, verdict set aside, <span style="float:right">FORSYTH</span>
and cause remanded for new proceedings not incon- <span style="float:right">vs.</span>
sistent with this opinion. <span style="float:right">KREAKBAUM</span>

Chinn and Loughborough, for plaintiff.